JOHN LAFOND et al., Appellants, *v.* HENRY W. DEEMS et al., Respondents.

A voluntary association instituted for moral, benevolent and social objects should not be dissolved by the courts for slight causes; and, if at all, only when it is entirely apparent that the organization has ceased to answer the ends of its existence, and no other mode of relief is attainable.

Such an association, where there is no power to compel the payment of dues, and where the right of the member ceases on his failure to make such payment, is not a partnership.

The parties hereto were members of an association for moral improvement, relief in sickness, and in case of death. In an action brought to dissolve the association the court granted the relief upon the ground that the association was divided into factions; that the feelings of hostility between the members were such as to render it impossible for them to agree as to the transaction of its business and the care of its funds, and that the usefulness of the association had departed. By the constitution and by-laws of the association provision was made for the redress of grievances and for the punishment of parties offending, and it was within the power of the association to suppress conduct of the kind complained of. An appeal was also authorized to a higher tribunal. No complaint before the association had been made against the members charged by plaintiffs with a violation of the rules. The by-laws provided that the association should not be dissolved save by a unanimous vote, and that no motion to dissolve should be entertained so long as ten members remained in good standing. *Held,* that the action was not maintainable; that plaintiffs at least were required in the first instance to resort to the remedies provided by the rules of the association before seeking the interposition of a court of equity.

The association, in order to obtain the room desired for their meetings, was obliged to hire more room than was actually required. It fitted up, furnished and sublet the portion it did not require, and rented its own room when not in use, and from the rents received, with the other income, a considerable fund had accumulated. *Held,* that this was not such a departure from the objects of the association as called for a dissolution, or as authorized a conclusion that the members were copartners.

(Argued June 1, 1880; decided September 21, 1880.)

Appeal from order of General Term of the Supreme Court, in the first judicial department, reversing a judgment in favor of plaintiffs entered upon a decision of the court on trial at Special Term.

This action was brought for the dissolution of a voluntary association known as "Washington Tent No. 1, Independent Order of Rechabites," of which association the parties were members, and for a division of its property and assets.

The objects of the association as declared in the constitution of the Order is "Mutual benefits in the exercise of temperance, fortitude and justice, securing to its membership, sympathy and relief in times of sickness and distress, and in the event of death the decent observance of the necessary funeral obsequies."

The constitution provided for the trial of members and for punishment for conduct unworthy of a Rechabite, by fine, suspension and expulsion. Also that any member feeling aggrieved by the decision of a Tent could appeal to the "High Chief Ruler," and also for a further appeal by either party to the "High Tent." The by-laws of "Washington Tent, No. 1," contained provisions for the trial of members violating any of the principles of the Order or violating its rules; also, that "this Tent shall not dissolve nor be dissolved unless by a unanimous vote," and that "no motion or resolution shall be entertained by the chair to dissolve or disband this Tent so long as ten members remain in good standing on the books."

The court found among other things:

"That there has been no meeting of the "High Tent" since the year 1860, to whom aggrieved and wronged members of the association could appeal, under the constitution, for redress or relief; neither is there likely to be any such meeting or meetings held in the future; that there is no such office in existence as the High Chief Ruler, to whom a notice of appeal, as provided for by the by-laws and general laws of the association, could be given, and there is no way open to the plaintiffs by which such appeal can be taken or made effectual."

"That the members of the said association have departed very much from the objects of the association, except in respect to abstinence from the use of intoxicating drinks; and have transacted and done business as an association, independent, outside of, exclusive and disconnected from its original object and intent; and have hired and rented premises or rooms, and have sub-let or re-rented the same at an increased rental value; and that the moneys and profits thus derived were placed with the general fund of said association."

It appeared, in reference to this, that the association, in order to procure the room desired by it, were obliged to rent more room; that portion not required it fitted up, furnished and sub-let, and also let its own room, when not in use by it. The accumulations, which amounted to $4,655.93, mostly accrued from the rents.

The court further found:

" That in the year 1845 and 1846 as many as 300 or 400 persons attended the meetings of the association, while now the whole membership has dwindled down to thirty-nine, with an average attendance of from twelve to twenty-five members at each meeting.

That the association is divided into factions and cliques; that the feelings of the members are bitter and hostile to each other, and are such as prevents a reasonable expectation of the success of the association; that such feelings are irreconcilable, and that the usefulness and utility of the association has departed.

That in the transaction of said independent business, the said bitter and hostile personal feelings have grown between the members, and it is impossible for them to agree in regard to the proper conduct of the business of said organization, and particularly as to the proper care of said fund, and the conduct of the business out of which the same has been accumulated, and that such enmities and differences are irreconcilable.

That the said plaintiffs and defendants, as members of said association, are jointly the owners of a large amount of property not purchased for, or used in, the carrying out of the original object, design or intent of its organization, but purchased, acquired and accumulated expressly for its use, and used exclusively for, and in such independent or outside business matters, and wholly unnecessary for the carrying out, and on, of its intents, designs and objects as a temperance or benevolent organization."

As conclusions of law, the court found that as to the accumulated fund, the parties were partners; that all the property was their common property, and directed a dissolution of the association and a distribution of its funds.

Further facts appear in the opinion.

*Walter S. Cowles* and *Edward B. Cowles* for appellants. The by-laws and regulations of the association cannot have the force of law, or impair or affect the rights of property against

Statement of case.

the will of its real owners. (*Austin* v. *Searing*, 16 N. Y. 112; *Heath* v. *Pres't of Gold Exchange*, 6 Abb. Pr. [N. S.] 251, 257.) The association partakes of the nature of a partnership. (*Gorman* v. *Russell*, 14 Cal. 531; *Dennis* v. *Kennedy*, 19 Barb. 526; *Wells* v. *Gates*, 18 id. 377; *Babb* v. *Read*, 5 Rawle [Penn.], 51; *Beaumont* v. *Meredith*, 3 Vesey & B. 180; *Greenwood's case*, 23 Eng. L. & E. 422; Collyer on Partnership, § 53; Gow on Partnership, Part 2, 227; *St. James Club*, 13 Eng. L. & E. 589; *McMahon* v. *Rauhr*, 47 N. Y. 67; *Goesele* v. *Bimeler*, 5 McLean [U. S. C.], 223, 230, 234; Parsons on Partnership, * 459.)

*Wm. H. Townley* for respondents. The persons constituting this " Tent " or association, having made laws and regulations for themselves, to which all the parties to this action have subscribed, and which are not in conflict with the law of the land, they should, therefore, be upheld and enforced. (*Pearce* v. *Piper*, 17 Vesey, 1; *White* v. *Brownell*, 2 Daly, 329.) The members of this organization are not copartners as between themselves, and the principles governing the conduct and dissolution of copartnerships do not apply. ( *White* v. *Brownell*, 2 Daly, 329; *In re St. James Club*, 13 Eng. L. and Eq. 589, 592, and 19 Pick. 361; *Leech* v. *Harris*, 2 Brewst. [Penn.] 571–576; *Hyde* v. *Woods*, 2 Sawyer, 655–659; *Thomas* v. *Ellmaker*, Penn. L. J. 502; 1 Lindley on Partnership, 57; *Bromley* v. *Williams*, 32 Beav. 177; *Fleming* v. *Hector*, 2 Mees. & W. 172; *Caldicott* v. *Griffiths*, 8 Exch. 898; *Waterbury* v. *The Merchants' U. Ex. Co.*, 3 Abb. Pr. [N. S.] 163; *Bray* v. *Farwell*, 3 Lans. 495; *Sharp* v. *Warren*, 6 Price, 131; *Smith* v. *Virgin*, 33 Me. 148; *Innes* v. *Wylie*, 1 Car. & Kir. 262; *Brancker* v. *Roberts*, 7 Jur. [N. S.] 1185; *Hopkinson* v. *The Marquis of Exeter*, London Times, Dec. 31, 1867; Law R., 5 Eq. Cas. 63; *Commonwealth* v. *Pike Beneficial Soc.*, 8 Watts & Serg. 250; *Bear* v. *Bromley*, 11 Eng. L. & Eq. 414.) Internal regulations govern in the case of voluntary associations and partnerships. (*Brown* v. *Monmouthshire Railway*, 13 Beav. 32; *Bailey* v. *Birkenhead Railway*, 12

id. 433; *Carlen* v. *Drury*, 1 Ves. & Beames, 154; *Blissitt* v. *Daniel*, 10 Hare, 493.) The courts will not interfere in the internal affairs of these voluntary societies so long as their rules and laws are reasonably and honestly administered, and complaining members will first be required to exhaust the remedies which these laws afford before equity will interfere to aid them. (*White* v. *Brownell*, 2 Daly, 329; *Ellison* v. *Bignold*, 2 Jacob & Walker, 503; *Gorman* v. *Russell*, 14 Cal. 531.) Slight differences between copartners will not justify equitable interference. (Collyer on Partnership, § 296.)

MILLER, J. The organization which the plaintiffs seek to dissolve and close up, by a distribution of the funds belonging to the same, is a voluntary association instituted for moral, benevolent and social objects, and occupies a different position from institutions of a financial character. In view of the purposes for which such societies are organized, they should not be dissolved for slight causes, and if at all, only when it is entirely apparent that the organization has ceased to answer the ends of its existence and no other mode of relief is attainable. The judgment of the Special Term dissolving the association is based upon the ground that the division of the association into factions, and the hostile feeling of the members toward each other, were such as to render it impossible for the members to agree as to the transaction of the proper business of the association, and particularly as to the proper care of the fund; that, by reason thereof, the enmities and differences engendered were irreconcilable and the usefulness of the association had departed. It is not to be disguised that at some of the meetings of the organization severe and harsh language was employed, unfit for the occasion and unbecoming the members who used it. These expressions appear, however, to have been the result of undue excitement and bad feeling, which had been created by the strifes and dissensions arising among the members as to the government and control of the association and the acts of some of its officers. Without entering into an examination of the evidence in reference to these matters, it is

sufficient to say that it was entirely within the power of the association to suppress conduct of this character, and it was not so subversive of the organization as to require the interposition of the power of a court of equity to obtain the relief demanded. It would seem that in regard to most, if not all, of the charges made in this respect, the organization applied the proper remedies; the alleged disorderly proceedings were suppressed, and the improper conduct of the officers was in the course of investigation and correction when this action was brought. The dissensions manifested at the meetings of the association, the conduct of the members and the alleged delinquencies of the officers, must be regarded, having in view the constitution and by-laws of the association, and the rules adopted for the redress of grievances and for the punishment or expulsion of unworthy members. The third article of the constitution declares what offenses are punishable and prescribes the penalty, and in connection with the second article a system is provided for preferring charges and for the trial of accused parties. These provisions furnish a remedy for the redress of grievances and for the punishment of parties offending, by fine, suspension and expulsion. An appeal is also authorized, by any party aggrieved, to a higher tribunal, the High Chief Ruler.

As no complaint was preferred in reference to the act or conduct of any member, and no action taken as to the alleged difficulties which demanded a trial; in fact, no movement whatever made on the subject, when all adequate relief could have been thus attained, we think that the plaintiffs do not occupy a position which would justify the interference of a court of equity. Nor does it, in my opinion, affect the right of the plaintiffs to relief that the appellate power had not met since 1860, as it does not appear that any appeal would have been required from the determination of the association if charges had been presented and a trial had under the constitution and by-laws. The discontinuance of the appellate power was an incident which might possibly occur, and a risk assumed by those who belonged to the organization. Of itself it would not render a dissolution necessary, and especially when no at-

tempt had been made to obtain redress within the association, and it is not apparent that the exercise of the right of appeal was in any way important.

As the members who are claimed by the plaintiffs to have been chargeable with a violation of the rules of the association were not called upon to answer, so as to correct the evils complained of, and as the power to remedy the same was ample and complete, the plaintiffs are not in a position to seek the interposition of a court of equity. (*Carlen* v. *Drury*, 1 Ves. & B. 154; *White* v. *Brownell*, 6 Abb. [N. S.] 162.) Courts should not, as a general rule, interfere with the contentions and quarrels of voluntary associations, so long as the government is fairly and honestly administered, and those who have grievances should be required in the first instance to resort to the remedies for redress provided by their rules and regulations. This had not been done in the case considered, and under such circumstances no action lies. None of the authorities cited by the plaintiffs' counsel sustain the position that the remedy is at law or in equity, unless there is well-grounded cause for complaint; and even then an opportunity should be given to correct the cause of complaint within the organization, where it can be properly done.

Nor are the plaintiffs entitled to the relief claimed upon the ground that the members of the society were copartners. Associations of this description are not usually partnerships. There is no power to compel payment of dues, and the right of the member ceases when he fails to meet his annual subscription. This certainly is not a partnership, and the rights of copartners as such are not fully recognized. The purpose is not business, trade or profit, but the benefit and protection of its members, as provided for in its constitution and by-laws. In accordance with well-established rules, no partnership exists under such circumstances. (3 Kent, 23; *In re St. James' Club*, 13 Eng. L. & Eq. 589; *McMahon* v. *Rauhr*, 47 N. Y. 67.)

It is claimed that the society departed from the objects of its organization by the accumulation of a fund from the rents of rooms, and as to that fund the members were copartners.

It appears that the association originally was obliged to hire more room than was actually required, to obtain the room which they wanted for their meetings, and that it fitted up, furnished and sub-let what was not needed, and rented its own room when not in use. From the rents received a fund of a considerable amount has accumulated, in connection with the other income, dues, fines and initiation fees. The amount thus on hand is not so large as to be beyond the reasonable wants of an association whose object was benevolence and the cultivation and practice of the higher virtues. The renting of rooms was not the business of the association, but merely incidental to its primary object, and the rents received were the result of accident and good management in the exercise of a proper discretion, having in view merely the accommodation and the prosperity of the association. There was, we think, no such accumulation of funds as calls for the dissolution of the association upon any such ground, or authorizes a conclusion that a copartnership was thereby created.

There is no claim that the fund is not properly invested, nor any disagreement as to the same. Nor is it apparent that differences exist which cannot be reconciled, or wrongs prevail which cannot be remedied. The association was intended to be perpetuated as long as practicable, and one of its by-laws provides that it shall not be dissolved unless by a unanimous vote. Another declares that no motion or resolution shall be entertained by the chair to dissolve the same, so long as ten members remain in good standing on the books. It should not, therefore, be disturbed unless for sufficient reasons. None such appear in the case presented, and the order of the General Term should be affirmed, and judgment absolute upon the stipulation ordered for the defendants, who succeeded, with costs.

All concur.

Order affirmed and judgment accordingly.