JOSEPH F. LOUBAT, Appellant, *v.* HERMAN R. LE ROY, Treasurer of the Union Club of the City of New York, Respondent.

*Power of a club to expel one of its members for misconduct — he is entitled to notice and to have an opportunity to appear and be heard — rules of the Union Club of the city of New York, in relation to this matter, considered and construed.*

This action was brought by the plaintiff against the treasurer of the Union Club of the city of New York to have decreed as unlawful, null and void a resolution of expulsion passed against the plaintiff, at a meeting of the governing committee of the club, and to enjoin and restrain the defendant, and the other officers and members of the club, from interfering with the enjoyment by the plaintiff of his rights and privileges, as a life member of the club. At the time the resolution was adopted the committee consisted of twenty members, eighteen of whom were present at the meeting at which the resolution was adopted, fourteen of whom voted for the adoption of the resolution and four of whom voted against it. The resolution was adopted upon the report of a committee of five of its members, who had been appointed to investigate and report as to the facts. It was claimed that before bringing the action, the plaintiff should have applied to the committee to have the resolution of expulsion reconsidered and revoked, as he was authorized to do by the rules of the club.

*Held,* that the probability that favorable action might, in this manner, have been secured was so extremely remote as to relieve the plaintiff from the necessity of applying for such reconsideration, before resorting to this action.

On May eighteenth a committee of five of its members was appointed, at a special meeting of the governing committee, to investigate and report an exact statement of the facts in relation to the difficulties existing between the plaintiff and another member of the club, with instructions to inform them of the resolution appointing the committee and give them an opportunity to appear. The plaintiff was served with a copy of the resolution and appeared before the committee, at a time fixed by it with his counsel, and read a written statement which he left with it. The committee took the statements of the other member and of other witnesses in the absence of the plaintiff. At a meeting of the governing committee, held on May 25, 1882, the committee of five made their report, to which they added the statements so obtained by them. This report was considered by the eighteen members of the governing committee then present, including the members of the committee of five, and a resolution of expulsion adopted by a vote of fourteen to four.

*Held*, that the failure of the governing committee to give the plaintiff notice of the meeting and an opportunity to be heard deprived the resolution of expulsion of all legal effect as to him. (DANIELS, J., and DAVIS, P. J.)

That this result was not affected by the failure of the plaintiff to request to be allowed to be present and be heard, as the committee was legally bound to extend and secure the opportunity for a hearing to the plaintiff, before its members could proceed to the hearing and consideration of the case.

The governing committee consisted, by the constitution of the club, of twenty-four members, and "a two-thirds vote of the governing committee" was thereby declared to be necessary for the expulsion or suspension of a member. Another article of the constitution declared that "a majority of its members, exclusive of those absent by its permission, shall constitute a quorum of the governing committee."

*Held*, that a resolution of expulsion or suspension required the affirmative vote of sixteen members of the committee. (DANIELS, J.)

APPEAL from a judgment rendered at the Special Term, dismissing the plaintiff's complaint.

*Joseph H. Choate,* for the appellant.

*James C. Carter* and *Edmond R. Robinson,* for the respondent.

DANIELS, J.:

The club of which the defendant is the treasurer is a voluntary, unincorporated association, consisting of a large number of members, and owning property for their use and enjoyment, and as such may be sued by an action against the treasurer as a joint-stock company under the statutes of this State. The plaintiff was a member of the club, who had paid the requisite sum of money to entitle him also to life membership, and by a resolution of a quorum of

the governing committee of the club, adopted on the 25th of May, 1882, he was, in form at least, expelled from his membership of the club. This expulsion was directed because of misconduct on the part of the plaintiff, in part occurring in a conversation in the club-house with several of its members, on or about the 28th of November, 1881. In this conversation the plaintiff indulged in what was regarded as a very improper observation. It caused an immediate altercation, in which strong expressions of condemnation of what he had said were made by this person. This afterwards led to a repetition of the censure expressed, and a correspondence further embittering the relations existing between these persons. Publicity was given to the correspondence, afterwards resulting in the investigation producing the plaintiff's expulsion. If the case were to be disposed of upon its merits, as it was made to appear before the quorum of the committees acting upon the subject, no reluctance whatever would be felt in the way of sustaining the conclusion arrived at, as it was a matter solely to be governed by the rules and regulations of the club itself, and the authority designed to be vested in what was called the governing committee. (*Dawkins* v. *Autrobus*, Law. Rep., 17 Ch. Div., 615.) But the difficulties in the way of maintaining the proceedings which were taken do not arise out of any doubt as to the sufficiency of the charge of misconduct made against the plaintiff, or of the evidence given to sustain it, but have been created by the manner in which the proceedings were carried on for the investigation of his conduct, and resulting in the resolution of expulsion. These proceedings have been assailed by the action as having been unlawfully carried on, and upon that ground it has been insisted that the expulsatory resolution was inoperative and void. An objection to the consideration of these points has, in the outset, been made upon the effect of the ninth rule of the club. This rule provided that "in no case when a resolution has been passed at a meeting of the committee affecting the relations of a member of the club towards the club, shall such resolution be reviewed, acted upon or rescinded at a subsequent meeting without a notice in writing being sent by the secretary to each member of the committee at least ten days before the meeting, that such previous action will be brought up for review or reconsideration."

The resolution of expulsion was adopted at a meeting of a quorum of the committee mentioned in this rule, and under the rule the committee had the power to reconsider the action which had been taken and to revoke the resolution which had been in form adopted. It is not entirely clear that the power of the committee, which might have been invoked in behalf of the plaintiff, but was not, does not present a well-founded legal objection to the right of the plaintiff to maintain this action. For the principle has been settled as to organizations of this description that an action will not be sustained to correct errors, or illegal acts, in the course of their government and administration until the remedies provided for that object by the by-laws or constitution, or both, of the association have been exhausted. (*Lafond* v. *Deems*, 81 N. Y., 507.) That case, however, differed from the present one by providing for an appeal to an officer not concerned in the ground of complaint as the foundation of the action. Where such an appeal may have been provided it is entirely just and reasonable that it shall be pursued, and the remedy exhausted before an action should be allowed to be maintained in a court of justice to rectify the alleged wrong. But the remedy mentioned in this section of the by-laws was not in the nature of an appeal, or an application for a rehearing, before a superior board or tribunal of the club, but it merely provided for and permitted an application to be made for a rehearing to the same persons who previously joined in the resolution of condemnation and expulsion. The committee, at the time when its action was taken, consisted of twenty members, eighteen of whom were present, and fourteen of the members voted for the adoption of the resolution. This was done upon the facts submitted for the consideration of these members of the committee, and the resolution which they adopted conclusively establishes the fact that they had formed and acted upon convictions adverse to the plaintiff, and after that the probability is extremely slight, indeed, that they could have been induced to change their views and act differently upon an application for the reconsideration of the resolution. The probability that favorable action might in this manner have been secured by the plaintiff is so extremely remote that, in the reasonable administration of the law, he should not be held to be required to apply for such reconsideration before commencing an action to

restrain the enforcement of the resolution against him, if that should turn out to have been unlawfully adopted. For if that should be required the requirement might as well be indefinitely repeated, which would have the effect of preventing an action of this description in all cases for the correction of the illegal proceedings of the association, and that would be no less than a denial of justice in this class of cases. The great improbability that the committee would reach a different conclusion upon a reconsideration of the evidence submitted to it is considered to be a legal answer to this objection, and that will require the examination and consideration of at least two of the objections presented to the proceedings which have been taken.

The first of these relates directly to the manner in which the proceedings themselves were carried on. They were initiated by what is called the governing committee of the club. On the 18th of May, 1882, a committee of five of its members, was appointed at a special meeting of the board of governors, to investigate and report to the governing committee, at a future meeting, an exact statement of facts in relation to the difficulties existing between Messrs. J. F. Loubat and Henry Turnbull, with instructions to inform them of the resolution and giving them an opportunity to appear before the committee of five. This committee transmitted a copy of the resolution to each of these individuals, accompanied with a notice from the chairman of the committee, that its members " will be glad to receive from you a statement of the facts, and hereby request you to appear before them in the sub-committee room of the club-house on Friday the nineteenth, at four o'clock P. M." This committee took the statements of the plaintiff and Henry Turnbull and of other persons. That furnished by the plaintiff was in writing and was made when he himself and his counsel were in the presence of the committee. The other statements taken by the committee were obtained in the absence of the plaintiff, and after obtaining these statements, and on the twenty-fifth of the same month, the committee made a report to the governing committee, to which they added the statements so obtained by them. This report was considered by so many of the governing committee as were at the time present, including the members of the committee of five, and it resulted in the adoption of the resolution for the plaintiff's expulsion.

It is clearly evident from the resolution under which the committee of five was appointed, that the object of that appointment was one of mere investigation. It was to collect, as far as that could be done, authentic statements of the facts relating to the plaintiff's conduct and the contention and disagreement following it. This committee had no power, either under the resolutions or the constitution or by-laws of the club, to act upon the evidence so to be obtained. The power to act was vested by the constitution in the governing committee, and when the report of the committee of five was made to it with a statement of the evidence or information obtained, the case was first placed in the condition in which effective action could be taken upon the facts. The governing committee was the sole body to hear and determine the case, and to adopt the conclusion or take the action, which might be considered justifiable under the circumstances appearing. But in taking the action which they did upon the report and the information submitted with it, no notice of their consideration or that they designed in any manner to act upon the report of the committee of five, was given to the plaintiff. He had no opportunity to appear before the governing committee, or to be heard concerning the action which it might be considered proper to take. If he had been, notwithstanding the cogency of the evidence against him, he might have submitted some reasons, or some considerations, which would have mitigated the action of the members of the committee in attendance, and resulted in a punishment short of that which was provided for by the resolution. This probability, or even though it may be only a possibility, has in all investigations of this description been considered sufficient to require, as a demand of justice, that the party proceeded against shall in all cases have notice of the hearing intended to be had, and an opportunity to exculpate himself as far as that may be done, either in the vindication or palliation of the misconduct forming the foundation of the complaint. The legal principle is a general one affecting all proceedings which may result in loss of property, position or character, or any disaster to another; that he shall be first heard by the board or tribunal considering his case before that body will be legally permitted to pronounce his condemnation. This principle has been considered and applied to the action of associations of this description, and it

has been held in general terms that its committee is bound to act " according to the ordinary principles of justice, and are not to convict a man of a grave offense which will warrant his expulsion from the club without fair, adequate and sufficient notice, and an opportunity of meeting the accusation brought against him." (*Fisher* v. *Kéane*, L. R., 11 Ch. Div., 353.) It was also considered in many other cases, resulting uniformally in its approval and confirmation (*Hopkinson* v. *Marquis, etc.*, L. R., 5 Eq., 63; *Labouchere* v. *Earl, etc.*, L. R., 13 Ch. Div., 346; *Wood* v. *Woad*, L. R., 9 Ex., 190), where, in the course of the decision, it was said, " no man shall be condemned, to consequences resulting from alleged misconduct, unheard and without having the opportunity of making his defense. This rule is not confined to the conduct of strictly legal tribunals, but is applicable to every tribunal or body of persons invested with authority to adjudicate upon matters involving civil consequences to individuals." (Id., 196.) A like principle was also declared in *Innes* v. *Wylie* (1 Car. & Kir., 262); *Willis* v. *Childe* (13 Beav., 117); *Murdock* v. *Philip's Academy* (12 Pick., 244), and by Mr. Justice LAWRENCE in a very thorough and able opinion, considering the authorities in *Hutchinson* v. *Lawrence* (67 How., 38). This principle was violated in the proceedings taken against the plaintiff, for he was not afforded an opportunity to be present when the statements of other persons were obtained by the committee of five. Neither was he permitted to be present before the members of the governing committee in attendance when the report of the committee of five was received and acted upon and the resolution adopted for his expulsion. The failure on his part to request the privilege to be present is no answer to this exclusion, for he was not legally bound to ask this privilege, but the committee, taking action upon the evidence which was obtained, was legally bound to extend and secure the opportunity for a hearing to the plaintiff before its members could proceed to the hearing and consideration of the case. There was a total failure to observe this obligation of supplying the plaintiff with notice of the hearing and an opportunity to contest the action taken against him, and that deprived the proceedings as well as the final resolution of all legal effect as to him. The cases of *People ex rel. Flanagan* v. *Police Commissioners* (93 N. Y., 97); *People ex rel. Farrell*

v. *Same* (20 Hun, 402), and *People ex rel. Gilhooly* v. *Same* (23 id., 351), are in entire harmony with this principle, for in each of them the relator was afforded an opportunity to be present before the board and contest its action when the final hearings were had upon which the decisions complained of were made. Instead of being authorities sustaining the proceedings taken against the plaintiff they add further support to the necessity already suggested of observing the obligation to give notice, and afford the party proceeded against an opportunity to be heard before a determination can legally be made against him.

The governing committee of the club, to which its government and management was confided, was to consist of twenty-four members, and by subdivision 3 of section 4 of the constitution a two-thirds vote of the governing committee was declared to be necessary for the expelling or suspension of a member. At the time when these proceedings were taken the committee had been reduced in number to twenty members, and but eighteen were present on the occasion when the report of the committee of five was considered and the vote for the expulsion of the plaintiff was taken. Fourteen only of the members who were present voted in favor of the adoption of the resolution, the other four being opposed to it. The resolution, therefore, failed to secure the vote of two-thirds of the members of the governing committee. To constitute such a vote, that of sixteen of the members was, by this provision of the constitution, required. But it has been supposed because the twelfth article of the constitution declared that " a majority of its members, exclusive of those absent by its permission, shall constitute a quorum of the governing committee," that the action taken on this occasion had been in this manner provided for and sanctioned. And cases have been cited arising under the Constitutions of different States relating to the powers of legislative bodies in support of this position. These cases do not require that any special attention shall be devoted to them, for the provisions of the Constitutions under which they arose were entirely different from the constitution of this club. They were so framed as to permit the quorum, designated by them, to constitute the legislative body, while the constitution of this club has not so provided, for it has not been declared that a majority of the members required to create a quorum should be authorized to expel a member from the club. Upon this subject but one pro-

vision was inserted in the constitution, and that declared a two-thirds vote of the governing committee to be necessary for this purpose. · It was an extreme measure, which might be attended with very disastrous consequences to the person expelled; and there was great reason, therefore, for specially guarding this power, so that it should be exercised only upon occasions and charges fully justifying its use, and by so large a body of members as would be free from the imputation of prejudice, bias or other improper motives. That would not always be the case if the power could be exercised by two-thirds of the members required for a quorum, for as the provision of the constitution declaratory of the quorum was framed this quorum might be reduced to a very small number of members, by permitting the absence of other members of the governing committee. This permission was not restricted, but it was provided in such language as would enable the committee, by permitting the absence of members, to dispense with their attendance until the smallest possible number might be in attendance. In this manner the committee had the power to reduce the number requisite for a quorum to certainly no more than three persons; and if the quorum provided for possessed the power of expulsion, it might, by permitting absences, be exercised by the votes of even two of its members, for they would constitute two-thirds if but three members should be in attendance. This, it is true, is an extreme supposition, but it is justifiable as an illustration of the effect of the construction which should confide the power of expulsion to two-thirds of a simple quorum of the members of the governing committee. The number probably might never be so far reduced, but as long as there is a possibility that it could be, that fact of itself indicates it to be highly probable that it was not intended to entrust a mere quorum with the exercise of this important power of expulsion. The constitution has not so provided. It has made but one declaration upon this subject, and that is, not that two-thirds of a quorum may expel a member, but that it shall be done only by "a two-thirds vote of the governing committee." This provision is plain, and no other contained in the constitution evinces the intention to have been to provide for the reduction, under any circumstances, of that vote. In this respect the provision is highly conservative, wisely providing for the protection of the rights of the members, and as

long as no other provision of the constitution has declared, either in terms or by any clear implication, that any less vote than that of two-thirds of the governing committee shall expel a member, the constitution should be construed as forbidding the exercise of the power of expulsion in any other way. The courts are required to construe it as they do that of all other instruments, including the statutes of the State to be construed, and that is according to the fair or natural import of the language employed. That is to be assumed to have been expressive of the intention of the parties framing and assenting to the instrument. The language which was used in this constitution upon this subject is free from ambiguity. No other part of the constitution has referred to or qualified it in any manner whatever, and the protection intended to be afforded by it should not be cut down or reduced by the further direction as to the number of members by which a quorum may be formed. The existence of that quorum, as well as the provision of the constitution relating to it, will have full force and effect by allowing it to transact all the other business of the association by a majority vote of the members present, excluding that requiring a larger vote as the provision for the expulsion or suspension of a member very clearly does. The resolution which was adopted did not receive this vote. It failed to the extent of two votes of the designated two-thirds, and it was accordingly inoperative for this reason upon the rights of the plaintiff as a member of the club, as clearly found and stated in the decision of the learned judge presiding at the trial. No necessity, therefore, will exist for another trial of the action, but judgment upon the report and decision may be now finally pronounced, and that should be a judgment declaring the resolution of expulsion to have been adopted without legal authority and to be inoperative and void as to the plaintiff, and restraining the enforcement of it by the officers or members of the club against him, but without prejudice, if that shall still be deemed advisable, to further proceedings to be taken against the plaintiff in conformity with the principles of the law prescribed for their conduct and government. Whether the plaintiff shall also be allowed costs in the action will be reserved for determination to the time when the order shall be settled. As to the costs and disbursements of the appeal their recovery should be provided for by the order.

DAVIS, P. J. :

I put my concurrence in the conclusion of my brother DANIELS altogether upon the ground that the appellant was attempted to be removed without the trial and opportunity to be heard secured to him by the constitution and by-laws of the club. The only body clothed with authority to hear, try and remove the accused was " the governing committee." That committee had power to direct how it would take the evidence of the facts to be presented for its consideration at the trial. And they directed the same to be taken by a subordinate committee whose duties and functions were discharged whenever they made their report to the governing committee. The case had then reached a point of readiness for a hearing. It was the duty, then, of the governing committee to have given notice to the appellant of the time and place of the trial, with reasonable opportunity to attend and defend himself against the charges, and the judgment that ought reasonably to be imposed.

They gave no such notice, but proceeded without any further hearing, notice or attendance, and rendered judgment of expulsion. It matters not whether they did this by the voting of a quorum of the committee or of the entire body voting concurrently. In either view they had no jurisdiction to pronounce an effective judgment, and their action was *coram non judice.*

For this reason the judgment must be reversed and judgment ordered for plaintiff. My health will not permit me to examine the other questions of the case.

BRADY, P. J., concurred in the result.

Judgment reversed and judgment ordered for plaintiff, as directed in opinion.