| 49 | 171 |
| 121a | 45 |

---

# THEODORE THOMAS, Respondent, *v.* THE MUTUAL PROTECTIVE UNION, Appellant.

*A corporation created to promote friendly intercourse, etc., in a profession, cannot, by its by-laws, prohibit others from exercising such calling — what by-laws have that effect.*

The defendant was incorporated for the purpose of cultivating the art of music in all its branches, and the promotion of good feeling and friendly intercourse among the members of the profession, and for the relief of such of its members as should be unfortunate, so far as its means, in its opinion, would permit. The plaintiff became a member of the corporation in 1876, and although absent from the city of New York, where the operations of the corporation were

carried on, from 1878 to 1883, continued to pay his dues, and retained his membership therein. While he was absent, and in the year 1882, certain by-laws of the corporation were adopted, providing that it should be the duty of every member to refuse to perform in any orchestra or band in which any person or persons were engaged who were not members of the corporation in good standing, excepting organists and directors of musical societies and members of traveling companies, and with such for no longer a period than four weeks; also, providing that it should be deemed a breach of good faith and fair dealing between members of the union for a member of the same to employ a suspended or non-member; or to assist in any public performance given wholly or in part by amateurs. The by-laws also required a residence of six months in the United States before a person was eligible to membership.

'This action was brought to restrain the defendant from enforcing its by-laws and from fining the plaintiff for employing a person in his orchestra who was not a member of the union

*Held,* that the effect of the by-laws above enumerated was to create a close corporation, and to force each member of the profession to also become a member of the union unless he preferred to abandon his calling or seek some other locality in which to exercise it. (DANIELS, J., dissenting.)

'That the by-law which required a residence of six months in the United States before eligibility occurred for election as a member of the union, in view of the restrictions contained in the other by-laws, virtually prohibited a musician on coming into the United States from exercising his calling.

'That such by-laws were not calculated to promote the general good feeling and good fellowship which it was the object of the union to obtain, and were not only against public policy but antagonistic to the right of every man to earn his livelihood by honest labor. (DANIELS, J., dissenting.)

'That corporations have no more right to inflict injury upon others by combinations and associations designed to coerce workmen to become members thereof, or to interfere with, obstruct, vex or annoy them in obtaining work because they are not members thereof, or in order to induce them to become members, than individuals have.

'That if the act contemplated be in violation of law, and from its nature one in which the public interest is concerned, or be one by which it is apparent that an irreparable mischief is about to be done, the relief to be granted should not be made subservient to the doubtful proposition that damages may be obtained by an action at law, and that an injunction consequently should not issue, but that it was the duty of the court to arrest by injunction the initiation of a proceeding in any form which would lead to such results.

APPEAL from a judgment in favor of the plaintiff recovered on a trial at Special Term.

The judgment recovered in the action restrained the defendant from enforcing its by-laws against the plaintiff to recover penalties or fines of ten and twenty dollars for employing a person in his

orchestra who was not a member of the Protective Union.  The defendant was incorporated by chapter 168 of the Laws of 1864, afterwards amended and enlarged by chapter 321 of the Laws of 1878.  By the act of incorporation the persons named in it, and those associated with them, and all other persons who should afterwards be so associated, and their successors, were constituted, created and declared to be a corporation and body politic, for the cultivation of the art of music in all its branches, and the promotion of good feeling and friendly intercourse among the members of the profession, and the relief of such of their members as should be unfortunate, so far as their means, in their opinion, would permit.  The plaintiff became a member of the union in or prior to the year 1876.  He was absent from the city of New York, residing in Cincinnati from 1878 to 1880, but during his absence his dues were paid and his membership continued, and he again renewed it in 1883.  While he was absent, and in the year 1882, the by-laws of the corporation, now in controversy, were adopted.  And in August, 1885, the plaintiff proposed to Felix Bour to employ him as an oboeist to perform in his orchestra  Bour was at that time a foreigner, residing in Europe, and not eligible for membership in the union until he should reside here for the period of six months. This proposal was followed by a formal agreement for his employment with the plaintiff, made on the 21st of September, 1885, and under that agreement he acted as one of the musical members of the orchestra.  And it was for that employment that it was proposed to take proceedings against the plaintiff and impose a fine upon him, as a violation of the by-laws of the union.  These by-laws, so far as they are important to be considered in the disposition of the appeal, are the following :

### ARTICLE 3 — DUTIES OF MEMBERS.

SECTION 1. It shall be the duty of every member to refuse to perform in any orchestra or band in which any person or persons are engaged who are not members in good standing, excepting organists and directors of musical societies and members of traveling companies, and with such for no longer a period than four weeks ; and any member who shall have violated this section shall be deemed to have committed a breach of good faith and fair deal-

ings between the members of this society, and shall be punished according to section 2, article 11.

SEC. 2. It shall also be deemed a breach of good faith and fair dealing between members of this union for a member of the same to employ a suspended or non-member ; also to assist in any public performance given wholly or in part by amateurs, and under article 11, section 2, a violation of the first five sections of article 3 of the by-laws shall be considered as a breach of good faith, and the offender shall, after a fair and impartial investigation by the board of directors, if found guilty, be fined for the first offense ten dollars, for the second offense twenty dollars and for the third offense be expelled by the board of directors, whose decision shall be final.

Another by-law required a residence of six months in the United States as a condition to eligibility to election to membership in the corporation.

*King & Clement*, for the appellant.

*Eustace Conway*, for the respondent.

BRADY, J. :

Justice DANIELS has elaborately expressed his views of the questions involved on this appeal as they present themselves to his mind. If the by-laws under which the defendant meant to proceed against the plaintiff were valid, there would be no difference of opinion as to the result. They are not so, however, so far as they sustain the contemplated action of the defendant in interfering with the orchestral construction of the plaintiff. By the charter the objects of the defendant were declared to be the cultivation of the art of music in all its branches, and the promotion of good feeling and friendly intercourse among the members of the profession, and the relief of such of their members as should be unfortunate so far as the means in their opinion would permit. The by-law which requires every member to refuse to perform in any orchestra or band in which any person or persons are engaged who are not members of the union in good standing, excepting organists and directors of musical societies and members of traveling companies and with such, for no longer than a period of four weeks is not at all designed for the promotion of good feeling among the members of the profession and the relief of the

unfortunates.   Nor is the following designed to accomplish any such beneficent result:   Section 2. It shall also be deemed a breach of faith and fair dealing between members of this union for a member of the same to employ or engage a suspended or non-member; also to assist in any public performance given wholly or in part by amateurs.   The effect is to create a close corporation and to force each member of the profession to become a member also of the union, unless he prefers to abandon his calling, or seek some locality where he can employ his talents and exhibit his capacity to procure means for his support and that of his family if he have any.   The by-law which requires a residence of six months in the United States before eligibility occurs for election as a member in view of the restrictions contained in the other by-laws virtually prohibiting him from exercising his calling, is also arbitrary and not calculated to promote that general good feeling and good fellowship which it was the object of the union to attain.   It is arbitrary for the reason that during the period mentioned the musician is proscribed, unless he seeks some other place where his professional brethren do not present as a formidable barrier to his employment his recent advent to this country.   This strikes at talent, capacity, distinction, usefulness and the enjoyment of a meritorious performance by the public which is the chief design of music, which has charms, we are told, even to soothe the savage breast.   There is no response to be successfully made to the charge that such elements are not only against public policy, but antagonistical to the right of every man to earn, by honest labor, lawful in itself, whatever it will command, whether the laborer or artizan or artist be foreign or native born.   It would, doubtless, be a clever mode of securing, per force, the advantages of a successful union if the exclusion from labor of all musicians not members of the union could be accomplished, but this may not be done.   Unions of a benevolent or protective character should be the result of good feeling and a just appreciation of the rights of others and not arbitrary or oppressive.   The inciting motive to join them should be fraternal and not an apprehension of disaster.

It has been justly said that associations have no more right to inflict injury upon others than individuals have.   All combinations and associations designed to coerce workmen to become members, or to interfere with or obstruct, vex or annoy them in working or

in obtaining work because they are not members, or in order to induce them to become members, or designed to interfere with the perfect freedom of employees in the management and control of their lawful business, or to dictate in any particular the terms upon which their business shall be conducted by means of threats or injury or loss, by interference with their property or traffic, or with their lawful employment of other persons or designed to abridge any of these rights, are illegal combinations or associations. (BROWN, J. *Old Dominion Steamship Co.* v. *John J. McKenna et al.,* Alb. Law Jour., vol. 35, p. 208, March 12, 1887.) The charter of the defendant gave them no authority to adopt by-laws containing such elements. By the sixth section of that grant they were not to be inconsistent with any existing law. The plaintiff, by becoming a member of the union, did not bind himself to observe any unlawful feature of the constitution and by-laws. When they are against public policy and in restraint of trade, and, therefore, illegal and invalid, no assent or acquiesence can bind. (*Bissell* v. *Michigan, etc., R. R. Co.,* 22 N. Y., 258.)

The propriety of granting relief in a case like this cannot well be questioned. The engagement of the oboeist was for a period, and each performance was a violation of the by-laws. Section one of article three, as we have seen, made it the duty of every member of the defendant's society, including the plaintiff, to refuse to perform with him, as he was not a member of the union and its violation repeated might subject him to expulsion. The initiation of a proceeding in any form which could lead to such a result, founded upon by-laws illegal and invalid, should be arrested, and especially when the consequence might be the disbandment of an orchestra gotten together by tact, skill and industry, and which, if dispersed, might not be combined by any effort. It is enough that threats of such a disaster, with apparent power to accomplish it, are presented for consideration to warrant an injunction. The element of irreparable injury springs naturally from them, and invokes the equitable intervention of this court.

The danger apprehended of the dispersion suggested is sufficiently imposing, and the injured person should not be required to wait until the mischief is nearly complete before the machinery of a court of justice should be set in motion. If the act contemplated be in

violation of law, and from its nature one in which the public interest is concerned, or be one by which it is apparent an irreparable mischief is about to be done, the relief should not be made subservient to the doubtful proposition in such a case that damages may be obtained by an action at law, and the injunction consequently should not issue. .

It is thought, therefore, and with great deference to the learned opinion of Justice Daniels, that the decree appealed from should be affirmed with costs.

Van Brunt, P. J., concurred.


Daniels, J., dissenting :

(After setting forth the facts which appear at the beginning of this case, Judge Daniels' opinion, in speaking of defendant's by-laws, proceeded.)

· Their formal adoption and enactment by the union has neither been questioned nor denied, but they have been assailed by the plaintiff on the ground that the union had no legal authority to adopt them, and for that reason their enforcement should be restrained by an injunction. Such an injunction was issued in the action and it was made permanent by the judgment finally recovered.

The action was commenced on or about the 10th of November, 1885, and all that had then been done towards the enforcement of the by-laws against the plaintiff, was the issuing and service of a notice upon him on the preceding day, requesting him to attend a meeting of the board of directors on the thirteenth instant, at ten o'clock in the forenoon, to show cause why he should not be fined for two violations of section 1, article 3 of the by-laws, on the third and fifth of November. If the proceeding had not been restrained, all that could possibly have been accomplished by it, would have been the imposition of a fine of ten dollars for the first offense and twenty dollars for the second offense, mentioned in the notice. And whether upon a hearing before the directors, pursuant to the notice, any fine whatever would have been imposed upon the plaintiff, was, to say the least, quite uncertain. It has been asserted, on his part, that the person employed by him as an oboeist in his orchestra, was possessed of superior skill and qualifications to any player on the

same instrument to be found in the United States. This, however, appears from the evidence to have been a fact concerning which differences of opinion existed. Others considered individual musicians in the United States superior to Bour, who was expressly brought to this country by the plaintiff to become a member of his orchestra, while the plaintiff himself and others considered Bour to be the better player. Upon this evidence the fact has been found that it is a matter of difference of opinion or taste as to the superiority of the different players. By proving these facts before the directors, and the inability of Bour for the time being to become a member of the Union, they might very well have been induced to suspend further proceedings against the plaintiff until the expiration of the six months, after which Bour could become a member of the Union, and as he then actually did. It has been alleged in the complaint that in the event of further performances with Bour, as a member of the orchestra, proceedings were designed to be taken to expel the plaintiff and the members of his company from the union. But that has been denied by the answer and no evidence was produced upon the trial supporting this allegation. What the case disclosed, and all that it disclosed, was that proceedings were instituted by the notice for the trial before the directors of the plaintiff for these two violations of the by-laws. Whether the facts should be found against him, or the fine should be imposed upon him, was still left to the judgment and discretion of the board of directors. They were not imperatively required by the by-laws to find him guilty, or to fine him, but to impose a fine upon him only if he should be found guilty. And under this authority the directors might very well have accepted his excuse and explanations, and deferred the further consideration of the charges against him until Bour should be eligible for membership in the union. There was, accordingly, at the time when the action was commenced, no danger of any serious or irreparable injury being sustained by the plaintiff from the simple circumstance that these proceedings had been commenced by the service of the notice. He was in no such danger, even if fines might be imposed upon him, as for the time being, imperiled his membership in the union. And where that may appear to be the fact, it is not the practice of the court to issue an injunction and restrain proceedings of this description. What is essential to entitle the party to an

injunction is that he should be in danger of some irreparable injury, and that must be made to appear by the complaint, as well as the proof in the action, before it will be permitted to be issued to restrain the action of others. The necessity for such a state of facts to warrant an injunction, was declared by the court in *McHenry* v. *Jewett* (90 N. Y., 58). And this was quite decisively followed in *Hurst* v. *New York Produce Exchange* (100 N. Y., 605); and in *Lafond* v. *Deems* (81 id., 507) it was held that " courts should not, as a general rule, interfere with the contentions and quarrels of voluntary associations so long as the government is fairly and honestly administered, and those who have grievances should be required in the first instance to resort to the remedies for redress provided by their rules and regulations." * * * " None of the authorities cited by the plaintiff's counsel sustain the position that the remedy is at law or in equity, unless there is well grounded cause for complaint, and even then an opportunity should be given to correct the cause of complaint within the organization where it can be properly done." (Id., 514, and *Poultney* v. *Bachman*, 31 Hun, 49, follows the same principle.) The plaintiff, under the principles maintained by these authorities, was premature in his application for the injunction and in the commencement of his action. He should at least have made his defense before the board of directors, and if that failed, and proceedings were taken for his dismissal from the union because of the non-payment of the fines which might be imposed upon him, then he might very well have brought this action to test the validity of the by-laws under which the proceedings were taken against him. Up to that point certainly he was in no danger of any irreparable injury or loss from the action of the union and that, as a matter of fact, might never be reached.

The more important point, however, in the case is that which presents the legality of the by-laws themselves. The one which has been most directly brought in question is section 1 of article 3, defining and declaring the duties of the members of the union By this section it has been made the duty of every member to refuse to perform in any orchestra or band in which any person or persons are engaged who are not members of this union in good standing, except organists and directors of musical societies and members of traveling

companies, and with such persons for a no longer period than four weeks. The adoption of this section by the union has been objected to as beyond the authority conferred upon it by its act of incorporation, and that view was followed in the judgment recovered at the trial. Whether this was correct or not depends upon the construction to be placed upon the act of the legislature incorporating the defendant. The principal as well as the important authority conferred upon it for the adoption of by-laws, is contained in section 6 of chapter 168 of the Laws of 1864. By this section it has been declared that the said corporation shall have power, from time to time, to make and establish such by-laws, rules and regulations, not inconsistent with any existing law, as they shall judge proper, for the election of their officers and agents, for prescribing their respective functions and the mode of performing the same, for allowing them, or any of them, a suitable compensation, for admission of members, for imposing and collecting admission fees, fines and contributions from members, for defraying the erection of the building hereinbefore authorized, for regulating the times and places of meeting, for suspending or expelling such members as shall refuse or neglect to comply with the said by-laws and regulations, and generally for the management of their property, the regulations of their affairs and the transfer of their stock. In support of the judgment, it has been urged that a strict construction should be placed upon this section to limit and restrain the authority of the corporation under it. And authorities have been cited maintaining that as the general rule applicable to acts of incorporation. But this rule cannot be so applied in this instance; for, by section 10 of the act, it has been required that it " shall be favorably construed in all courts and places for the purposes thereby intended." The language employed in the section must, therefore, be given its free and unrestrained force and meaning. By this language the authority to enact by-laws for the imposition and collection of fines, and the suspension or expulsion of members who shall refuse to comply with the by-laws, was conferred upon the corporation. The only restriction to which the authority has been subjected is that the by-laws should not be inconsistent with any existing law. No existing law has been either cited or discovered, with which this by-law has been urged to be in conflict, other than the provisions contained in the statutes of the State on the

subject of conspiracies. And it is to that standard that the by-law must be brought to ascertain whether it does, in fact, conflict with this statute of the State. If it is inconsistent with the provisions of the statute, then it is inoperative and void; but if it is not inconsistent with the statute, then these provisions are valid, and the Union is entitled to carry them into effect. The criterion of this inconsistency must be the same as the courts have applied in the construction of statutes. And by that standard, if the statute and the by-laws at the same time can be carried into full force and effect, then there is no inconsistency or conflict between the one and the other. And it is as much the duty of the court to maintain the by-law in that case as it would be to maintain a statute embodying the same provisions, where it could be reconciled with the provisions of another or later statute relied upon as conflicting with it. The principle to be applied is far-reaching in its effects. For since the incorporation of the defendant, chapter 267 of the Laws of 1875 has been enacted, providing for the incorporation of any five or more persons of full age, citizens of the United States, a majority of whom shall also be citizens of this State, into a society or club, for social, mutual benefit, benevolent, temperance, politics, economic, patriotic, gymnastic, athletic, military drill, musical, dramatic, literary artistic, yachting, hunting, fishing, bathing, or lawful sporting purposes. And each of such bodies has been invested with the authority of adopting by-laws, not inconsistent with the Constitution and laws of the United States or of this State. And it is notorious that a very large number of corporations, of these several descriptions, have been organized under the provisions of this act and acts amendatory thereof. And an abridgment of the powers of the defendant will be equally so of each of these clubs.

The case of *People* v. *Fisher* (14 Wend., 9), has been pressed upon the attention of the court as an authority sustaining the contention of the plaintiff that this by-law is inconsistent with a law of the State. That was an indictment against the defendants for entering into a combination to advance their wages as journeymen shoemakers, and the court did hold that to be an indictable offense under the law of the State relating to conspiracies. It proceeded not only upon a consideration of the statute, but also upon the effect of certain early English authorities sustaining the view adopted by the

court. This may very well be said to have been a harsh construction of the law, certainly it was so as far as it depended upon the decisions in England which in their administration strongly discriminated against combinations of the mechanical and laboring classes. Its doctrine, however, was followed in *People* v. *Medical Society of Erie County* (24 Barb., 570.) But it was finally regarded with so much disfavor as to be abrogated by chapter 19 of the Laws of 1870 permitting the " orderly and peaceable assembling or co-operation of persons employed in any profession, trade or handicraft, for the purpose of securing an advance in the rate of wages or compensation or for the maintenance of such rate." And a great change seems also to have since been made by statutory enactments in the same general direction in the kingdom of Great Britain. (*Regina* v. *Duffield*, 5 Cox C. C., 404 ; *Regina* v. *Shepherd*, 11 Cox C. C., 325.) A still further advance was made in this State in the spirit of this legislation by the enactment of the Penal Code which took effect on the first of May, 1882, and that was probably in force at the time when this particular by-law was adopted by the defendant. By section 170 of this Code no conspiracy is punishable criminally unless it is one of those enumerated in the two preceding sections. The only one of these two sections applicable to this by-law is section 168. But in neither of the subdivisions of that section has it prohibited the adoption or enactment of a by-law, or the making of an agreement between two or more persons, forbidding the members of an associated body of men from employing themselves or rendering their services with a person or persons not members of the organization. What it has forbidden, and all that it has forbidden in this respect, is that by subdivision 5 of section 168 two or more persons shall not conspire together " to prevent another from exercising a lawful trade or calling, or doing any other lawful act, by force, threats, intimidation, or by interfering or threatening to interfere with tools, implements or property belonging to or used by another, or with the use or employment thereof." A violation of this provision of the law has been made a misdemeanor, and, like all criminal laws, it cannot be extended by construction. (*Verona Cheese Co.* v. *Murtaugh*, 50 N. Y., 314, 316.) But the court is only bound to enforce the provisions according to the fair import of the language employed in their enactment. An agreement made between two or more

persons, or a by-law adopted under such authority as was conferred upon the defendant, that the associates or members would not perform their services with any person or persons not members of the organization, has not, by this language, been forbidden. What the statute has forbidden is, that another person shall not be prevented by force, threats, intimidation, or by interfering, or threatening to interfere, with tools, implements or property belonging to or used by another, or with the use or employment thereof, from exercising a lawful trade or doing any other lawful act. The means by which the offense is to be committed, as it has been declared, are clearly applicable to both branches of the fifth subdivision of section 168 of the Penal Code. And those means in each enumerated instance include more than an agreement or a by-law, forbidding the associates to enter into an employment or to perform their services in conjunction with a person not a member of the associated individuals. This by-law provided for no use of force, threats, intimidation or interference with Bour. It was in no manner directed against him or any other person not a member of the union. He was left at full liberty to employ himself wherever he might be able to obtain employment. He might act wholly for himself or associate with other persons in musical performances. His liberty was in no manner abridged or restricted. And no force, threats, intimidation or interference forbidden by this subdivision, was proposed to be used against the plaintiff himself for violating this by-law. He was at full liberty to withdraw from the union, and, in that manner, *relieve himself entirely from all obligation to observe the by-law,* or if he did not choose to take that course, to employ persons who were not members of the union, which could do no more than to subject him to the loss of his membership in the union. It could not control him, neither did it propose to do so, by any such enforced action against him as is mentioned in the statute; neither were any threats made against him, or any acts of intimidation, or interference proposed which could result in abridging the free exercise of his own choice and employment. But he was left to control himself as he might elect to do that. If he elected to continue a member of the union, then the by-laws required him to employ his fellow members to the exclusion of other persons. If he was not satisfied to submit to that restraint he was at full liberty to withdraw and to

employ whomsoever he might choose. Or, if he did not withdraw from his membership, the utmost the union could do would be to exclude him therefrom by a vote of its board of directors, which would, in no manner, interfere with his freedom of action or impose any punishment whatever upon him. There was no restraint exercised over his conduct. He was in no manner prevented from exercising his lawful calling, or doing any other lawful act, by either of the means mentioned in this subdivision of the Code. There was accordingly no conflict between this by-law and the statute, but both could well subsist and be maintained together.

The case presented cannot be held to be included within subdivision 6 of section 168 of the Penal Code, for what may, or may not, be done in the way of preventing another from exercising a lawful trade or calling, or doing any other lawful act, has been clearly and fully declared in subdivision 5 of the same section. And that has been enacted in such a manner as to carry with it the clear implication that what it has not forbidden may lawfully be agreed upon and performed. This enactment, which first found its place in the Penal Code, evinces the intention of the legislature to have been, to control the conduct of parties in any manner interfering with the exercise of the lawful trade or calling of another, or doing any other lawful act, only by the provisions contained in this fifth subdivision. And it permits all such acts as have not been in this manner forbidden. And that will leave any two or more persons at liberty to agree not to enter into any employment in which a person or persons, offensive or objectionable to themselves, may for the time being be employed. And as an agreement to that effect would not be obnoxious to this enactment, a by-law of a corporation certainly could not be more so when it was made to depend upon the sole fact that it should not be inconsistent with the law of the State.

The cases of *Dunham* v. *Village of Rochester* (5 Cow., 462); *Hooker* v. *Vandewater* (4 Denio, 349), and *Stanton* v. *Allen* (5 id., 434), have been brought to the attention of the court, as authorities requiring a different application to be given to the law, but they evidently are entitled to no such effect. The first of these authorities depended upon the construction of a statute entirely dissimilar to that which is here required to be considered, while the facts proved in the others were held to establish a violation

of that provision of the Revised Statutes forbidding two or more persons to conspire to commit any act injurious to trade or commerce. The combinations there proven to have taken place were within that subdivision, which is inapplicable to this case, and the authorities depending upon it are consequently deprived of their control over this controversy. The case of *Springhead Spinning Company* v. *Reily* (L. R., 6 Eq. Cas., 551), also differs in its controlling features from the by-law of this defendant. For there it was proposed by placards and other means, and intimidation and threats, to prevent workmen from entering into the service of the plaintiff. These were the controlling attributes upon which the injunction was sustained, and their absence is clear and conspicuous in this particular instance. The case of the *Old Dominion Steamship Company* v. *McKenna* (reported in Alb. Law Jour., vol. 35, p. 208, March 12, 1887), is also as clearly distinguishable from the one now before the court. For there it was proposed not only to induce the workmen, who were in the plaintiff's employment, to abandon such employment, but in addition to that to prevent the plaintiff from carrying on its business as a common carrier, and from using or employing its vessels, lighters, etc., in the business, and to stop all dealings of other persons with the plaintiff, by sending threatening notices or messages to its various customers and patrons, etc. These allegations of fact, which were not denied, brought that case within the language of subdivision 5 of section 168 of the Penal Code, and also within the prohibition contained in the sixth subdivision of the same section. In these features it is clearly distinguishable from the complaint made against the defendant by this plaintiff. The cases of *Brien* v. *Longshoremen's Union Protective Association*, and of *People* v. *Seamen's Boarding House*, also, in their facts materially differ from the present controversy, and do not require to be followed in its disposition. Indeed, neither of the authorities, which have been brought to the attention of the court, will sanction such a construction of this by-law as will bring it into conflict with any statutory provision contained in the laws of this State. These laws were clearly designed to be more liberal in their effect than the principles of the common law antecedently existing. If they had not been

so intended to be, there could have been no occasion for their enactment, and their conformity to the advancing liberality of the age. Even at common law an agreement or by-law of this description would not have been illegal. This point was examined in *Commonwealth* v. *Hunt* (4 Met., 111). There the indictment charged the defendants with conspiring not to work for any master or person in their art, etc., who should employ any workman not a member of their club or society, or should employ any workman not a member of the club or society called the Boston Journeymen's Boot-makers Society in Boston. The defendants were tried and convicted of the crime of conspiracy under this indictment. Upon the trial it was contended that neither of the counts set forth a criminal offense, and the court was requested so to charge the jury. But that was refused, and the instruction was given that the indictment did set forth a criminal confederacy to do an unlawful act, and to effect the same by unlawful means. After the conviction had taken place, a motion was made in arrest of judgment and that motion prevailed, the court holding that it was not a conspiracy for the defendants to enter into and stand upon such an agreement. The opinion was delivered by Chief Justice SHAW, who held that the agreement of the society, not to work for any person who should employ any journeyman or other person not a member of such society, after notice to discharge such person, was not an unlawful conspiracy. And if it was not, it seems to follow that the by-laws of this defendant cannot consistently be charged to have been unlawfully adopted. In that case stress was placed upon the fact that the men were free to act and to agree to act as they did. And for that reason, among others, it was concluded that the indictment against them charged them with no criminal offense. This subject was further examined in *Bowen* v. *Matheson* (14 Allen, 499), which held that the constitution and by-laws of the Seamen's Mutual Benefit Association forbidding members to ship seamen for less than certain specified wages, and to use their best endeavors to prevent their boarders from shipping in any vessel, when any of the crew were shipped from boarding-houses not in good standing with the association, were not unlawful. And *Carew* v. *Rutherford* (106 Mass., 1), while holding it to be an unlawful conspiracy to induce or threaten to induce persons to leave the plaintiff's employment, and deterring or threatening to deter

others from entering it, and rendering him reasonably apprehensive that he could not carry on his business was an unlawful conspiracy, still conceded the law to be that a man may refuse to deal with any class of men. And that it it is no crime for any number of persons, without any unlawful object in view, to associate themselves together and agree that they will not work for or deal with certain men or classes of men, or work under a certain price or without certain conditions. (Id., 15.) A somewhat similar examination of the same subject was made by Mr. Chief Justice DALY in the case of the *Master Stevedores' Association* v. *Walsh* (2 Daly, 1). And the extreme harshness of the early authorities was considered by him to have disappeared in the more recent decisions which have become more tolerant for freedom of action by persons associating and combining in this manner. In this instance it is not charged, neither does the proof maintain the fact that the union was actuated by any malicious or unlawful intention in the adoption or enforcement of this by-law. But it was enacted to maintain what was undoubtedly deemed to be the best interests of the association, intending only to influence and affect the conduct of its own members, and leaving them also at full liberty, if they were dissatisfied with its restraints, to withdraw and in that manner remove themselves from the jurisdiction of the association.

The plaintiff, when he became a member of the union, assented to the exercise of the legal authority conferred upon it by its incorporating act. And he could not insist upon maintaining his membership and the privileges and immunities appertaining to it, without observing the by-laws adopted by the union, as long as there was no inconsistency between them and any law of the State. What the law has done has been to invest all persons with the utmost freedom for their own employment and the performance of their own services. Each person may follow his employment, unassociated with any other, or he may associate himself with others, who may prescribe the terms of their respective employments, provided it is not proposed to interfere with others having equal rights and preventing them by threats, intimidation or other unlawful interference, from persisting in and enjoying the same measure of freedom. The rights and privileges of the employer and employed are reciprocal. Each is vested with full liberty to carry on his business, or pursue

his employment individually, or associated with others as he may deem that to be best, and to be protected from all unlawful interference by force, threats or intimidation, or the other means of interference mentioned in the statute. To that extent every person is vested with complete and perfect liberty under the laws. That was not abridged by the by-law in controversy in this case. What it required of the plaintiff was, if he continued to be a member of the union, that he should carry on his orchestra, employing only members of the union. It provided no means for excluding others from his employment, or of restraining him in any manner from withdrawing from the union and employing whomsoever he chose. All the liberty that any citizen could legally demand was in this manner accorded to him.

Whatever he might do would be the result of his own voluntary inclination. If he continued to identify himself with the union it was subject to the obligation assumed by him of obeying all its lawful by-laws. If he elected not to be bound by this obligation he was at liberty at any moment to terminate his membership. And as it left him in that condition, the by-laws cannot justly be held to have transcended the authority conferred upon the corporation for its enactment, or in any manner to be inconsistent with any existing law of the State.

The judgment should accordingly be reversed and a new trial ordered, but on account of the preceding condition of the authorities referred to, and the statutory changes made by the legislature, it should be without costs.

Judgment affirmed.